UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:

                                                Chapter 13

J. Monroe Stebbins *aka* Julius Monroe Stebbins,

                                                Case No. 8-14-73357-las

                     Debtor.
-----------------------------------------------------------x

# MEMORANDUM DECISION AND ORDER

*Appearances:*

Phillips, Weiner, Artura & Cox
*Attorneys for Debtor*
By: Richard F. Artura, Esq.
165 South Wellwood Avenue
Lindenhurst, NY 11757


Stephen P. Gelfand, P.C.
*Attorneys for Artificial Horizon, Ltd.*
By: Stephen P. Gelfand, Esq.
548 West Jericho Turnpike
Smithtown, NY 11787


Marianne DeRosa, Esq.
*Chapter 13 Trustee*
115 Eileen Way
Syosset, NY 11791



Hon. Louis A. Scarcella, United States Bankruptcy Judge

This matter is before the Court on the motion of chapter 13 trustee, Marianne DeRosa, Esq. (the "Trustee"), to dismiss the case of debtor J. Monroe Stebbins *a/k/a* Julius Monroe Stebbins ("Stebbins"). The Trustee's motion asserts that Schedule D to the chapter 13 petition filed with the Court on July 23, 2014 lists Stebbins' secured debt as $1,248,747 and that amount exceeds the secured debt limitation of $1,149,525 established by 11 U.S.C. § 109(e) for an individual to be eligible for chapter 13 relief. Stebbins objected to the motion. In short, Stebbins argues that the debt at issue, which is a guaranty obligation owed to Artificial Horizon, Ltd. ("AHL"), is contingent and unliquidated and that the debt limits in 11 U.S.C. § 109(e) apply only to debts that are noncontingent and liquidated.

Having considered the motion, response, arguments of counsel, and supplemental briefs, the Court finds that, as a result of a personal guaranty, Stebbins owes a liquidated, noncontingent unsecured debt to AHL that exceeds the unsecured debt limit of $383,175 established by 11 U.S.C. § 109(e) for an individual to be eligible for chapter 13 relief. As such, Stebbins did not qualify to be a debtor under 11 U.S.C. § 109(e) when this chapter 13 was filed, and therefore, the case must be dismissed. This Memorandum Decision and Order constitutes the Court's findings of fact and conclusions of law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(a) and (b) and the Standing Order of Reference entered by the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 157(a), dated August 28, 1986, as amended by Order dated December 5, 2012, effective *nunc pro tunc* as of June 23, 2011.

## FACTS

The facts are taken from the parties' papers and from the bankruptcy schedules filed by Stebbins in this case.[1] The relevant facts are not in dispute.

Stebbins filed for chapter 13 relief on July 23, 2014 (the "Petition Date"). Stebbins is the sole shareholder of Throg's Neck Trading Group, Ltd. ("Throg's Neck Trading") which owned at least four parcels of real property in Bridgehampton, New York some of which were or are still subject to a Mortgage Consolidation, Modification, Extension and Spreader Agreement dated March 30, 2007 (the "Consolidated Mortgage") held by AHL. Stebbins executed a guaranty dated March 30, 2007 (the "Guaranty") of certain obligations owed to AHL by Throg's Neck Trading. Prior to the Petition Date, Throg's Neck Trading defaulted on payment of its indebtedness to AHL.

As a result of Throg's Neck Trading's default, AHL commenced a foreclosure action (the "Foreclosure Action") against Throg's Neck Trading and Stebbins in the Supreme Court of the State of New York (the "State Court"), and obtained a Judgment of Foreclosure and Sale on February 4, 2010. An amended judgment of foreclosure and sale in the Foreclosure Action was signed on March 24, 2010, and a Second Amended Judgment of Foreclosure and Sale was signed on April 25, 2012. A sale of two of the Bridgehampton properties secured by the Consolidated Mortgage occurred on June 22, 2012 and AHL was paid $2,750,000. On March 12, 2013, a Notice of Pendency with respect to the two remaining Bridgehampton properties was filed with the office of the Suffolk County Clerk and a referee was appointed in the Foreclosure Action on January 6, 2014 to compute the amount due to AHL. The referee filed a report dated January 24,

---

[1] The Court can take judicial notice of documents that are part of the public record, such as the debtor's schedules, for purposes of deciding eligibility. Fed. R. Evid. 201(b). *Teamsters Nat'l Freight Indus. Negotiating Comm. v. Howard's Express, Inc. (In re Howard's Express, Inc.)*, 151 Fed. Appx. 46, 48 (2d Cir. 2005) (stating courts are empowered to take judicial notice of public filings); *In re Bernick*, 440 B.R. 449, 450 (Bankr. E.D. Va. 2000) (citing *Brown and Co. Sec. Corp. v. Balbus (In re Balbus)*, 933 F.2d 246, 247 (4th Cir. 1991)).

2014 (the "2014 Referee's Report") calculating that the amount due to AHL for principal, interest, late fees, and ancillary charges totaled $1,248,746.63 as of January 24, 2014. The State Court entered another amended judgment of foreclosure and sale (the "Judgment") on April 22, 2014 (a) ratifying and confirming the 2014 Referee's Report, and (b) ordering that (1) AHL is entitled to a judgment for $1,248,746.63, plus interest at the judgment rate of 9% from and after January 25, 2014, costs and disbursements in the amount of $2,080, and reasonable legal fees in the amount of $19,500, and (2) the remaining two Bridgehampton properties securing the indebtedness owed by Throg's Neck Trading be sold at public auction.

The chapter 13 petition was filed before the public auction of the two remaining Bridgehampton properties could take place. The Foreclosure Action and the public auction of the Bridgehampton properties were stayed as a result of Stebbins' bankruptcy filing. 11 U.S.C. § 362(a). According to Stebbins' Schedule B (Personal Property) to the petition, the remaining Bridgehampton properties owned by Throg's Neck Trading consist of two separate five-acre plots with a scheduled value of $1,500,000 and $1,450,000 respectively. The Bridgehampton properties secure the obligation of Throg's Neck Trading to AHL. The stock in Throg's Neck Trading is Stebbins' only significant asset other than a medical malpractice claim against Stony Brook Dental and Stony Brook University Hospital in the amount of $100,000. Stebbins does not own any real property directly.

Along with his chapter 13 petition, Stebbins filed his Schedule D (Creditors Holding Secured Claims) listing only a noncontingent, liquidated, undisputed secured debt in the amount of $1,248,747 owed to AHL. The amount listed did not include costs and disbursements, or legal fees as set forth in the Judgment or statutory post-judgment interest. The Judgment amount of

3

$1,248,746.63, plus costs and disbursements, legal fees and post-judgment interest remained due and owing as of the Petition Date.

On September 8, 2014, the Trustee filed a motion to dismiss (the "Motion to Dismiss") this chapter 13 case because, *among other things*, the amount of secured debt listed by Stebbins exceeds the $1,149,525 statutory limit for secured debts under 11 U.S.C. § 109(e) for an individual chapter 13 debtor. On September 16, 2014, AHL filed an affirmation in support of the Motion to Dismiss.

On September 17, 2014, Stebbins amended his Schedule D ("Amended Schedule D") to list the debt due AHL as contingent, but did not make any other changes as to the liquidated nature or amount of the debt.

On September 18, 2014, AHL filed an objection to the confirmation of Stebbins' proposed chapter 13 plan on the basis that the plan does not provide for the payment of the AHL claim in full. On September 19, 2014, Stebbins filed opposition to the Motion to Dismiss asserting that regardless of the amount of debt he owes to AHL, his obligation under the Guaranty was contingent pursuant to § 1371 of NEW YORK REAL PROPERTY ACTIONS AND PROCEEDINGS LAW ("N.Y. R.P.A.P.L.") and should not be included in the debt calculation under 11 U.S.C. § 109(e). Stebbins contends that AHL elected its remedy under N.Y. R.P.A.P.L. § 1301[2] by commencing an action to foreclose its lien on the Bridgehampton properties instead of suing under the Guaranty, and thus may not now enforce the Guaranty until the conditions

---

[2] N.Y. R.P.A.P.L. § 1301 provides that:

> 1. Where final judgment for the plaintiff has been rendered in an action to recover any part of the mortgage debt, an action shall not be commenced or maintained to foreclose the mortgage, unless an execution against the property of the defendant has been issued upon the judgment to the sheriff of the county where he resides, if he resides within the state, or if he resides without the state, to the sheriff of the county where the judgment-roll is filed; and has been returned wholly or partly unsatisfied.

precedent under N.Y. R.P.A.P.L. § 1371[3] have occurred, i.e., the sale of all the Bridgehampton properties and entry of a deficiency judgment against him. Thus, according to Stebbins, the debt to AHL arising out of the Guaranty is contingent and unliquidated because the amount of the deficiency is unknown at this time.

    A hearing was held on the Motion to Dismiss on October 23, 2014, at which time the Court directed supplemental filings be submitted on the issue of whether Stebbins' obligation under the Guaranty was contingent and unliquidated. Stebbins, AHL and the Trustee all submitted supplemental briefings on the issue and a further hearing was held on December 18, 2014. The Court heard oral arguments from counsel. None of the parties presented any witness testimony or offered any exhibits into evidence. At the conclusion of the hearing, the Court granted the Trustee's Motion to Dismiss, ruling that the guaranty liability of Stebbins is an unsecured, noncontingent, liquidated debt, and that Stebbins is ineligible to be a chapter 13 debtor under 11 U.S.C. § 109(e). This Memorandum Decision and Order memorializes and is consistent with the Court's findings and ruling at the December 18 hearing.

---

    . . .
    3. While the action is pending or after final judgment for the plaintiff therein, no other action shall be commenced or maintained to recover any part of the mortgage debt, without leave of the court in which the former action was brought.

[3] N.Y. R.P.A.P.L. § 1371 provides that:

    1. If a person who is liable to the plaintiff for the payment of the debt secured by the mortgage is made a defendant in the action, and has appeared or has been personally served with the summons, the final judgment may award payment by him of the whole residue, or so much thereof as the court may determine to be just and equitable, of the debt remaining unsatisfied, after a sale of the mortgaged property and the application of the proceeds, pursuant to the directions contained in such judgment, the amount thereof to be determined by the court as herein provided.

DISCUSSION

I.      Eligibility under 11 U.S.C. § 109(e).

Section 109(e) provides, in part:

> [o]nly an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $383,175 and noncontingent, liquidated, secured debts of less than $1,149,525 . . . may be a debtor under chapter 13 of this title.

11 U.S.C. § 109(e). Thus, to be eligible for relief under chapter 13 of the Bankruptcy Code, an individual debtor must have unsecured debts aggregating less than $383,175 and secured debts aggregating less than $1,149,525.[4] Only noncontingent and liquidated debts are considered in computing the total amount of debts for eligibility purposes. Contingent and unliquidated debts are excluded from the computation.

The section 109(e) inquiry begins with the debtor's schedules. *In re Moore*, No. 10-11491, 2012 WL 1192776, at *5 (Bankr. N.D.N.Y. April 10, 2012). A debtor's schedules, however, may be an imprecise measure of how much is owed by the debtor as of the filing date or whether the debts have been improperly characterized as contingent or unliquidated. *Id.*, at *5. For this reason, in its section 109(e) analysis, a court may take into account materials outside a debtor's schedules. *Mazzeo v. United States (In re Mazzeo)*, 131 F.3d 295, 305 (2d Cir. 1997) (finding that a debtor's putative debt to New York State to be liquidated where it can be readily ascertained from what was owed as shown on filed tax returns less what was paid as set forth under N.Y. Tax Law § 165(g)). In so doing, a court may consider

> postpetition events and developments to the extent (and only to the extent) they shed light on the amount of secured and unsecured debt actually owed by the debtor *at the time of the filing of the petition*. [footnote omitted]. For example, in a situation . . . where a secured debt is mistakenly scheduled as an unsecured obligation,

---

[4] These amounts are adjusted every three years. 11 U.S.C. § 104(a).

6

> it would exalt form over substance to refuse to consider a postpetition amendment to the schedules that properly classifies the indebtedness. Similarly, if it were to become evident postpetition that the conditions giving rise to a contingent liability all occurred prepetition, common sense requires recognition of the reality that the debtor was liable for the debt on the petition date [emphasis in original].

*In re Moore*, 2012 WL 1192776, at *5 (quoting *In re Hatzenbuehler*, 282 B.R. 828, 833 (Bankr. N.D. Tex. 2002)); *In re Arcella-Coffman*, 318 B.R. 463, 475 (Bankr. N.D. Ind. 2004). "The reason for allowing courts to look beyond schedules and petitions is to prevent a debtor from circumventing the rules." *United States v. Edmonston*, 99 B.R. 995, 999 (E.D. Cal. 1989). See also *In re Jerome,* 112 B.R. 563, 566 (Bankr. S.D.N.Y. 1990) (finding that the proof of claim filed by an unscheduled creditor would result in the debtor's unsecured claims exceeding the section 109(e) limitation.) Accordingly, in determining whether Stebbins is eligible for chapter 13 relief, this Court may consider materials outside of Stebbins' schedules, such as the proof of claim filed by AHL, the Judgment, and, in particular, language contained in the Guaranty that gives rise to the debt to AHL.

A. Whether the Guaranty Obligation Is Contingent.

In his original Schedule D, Stebbins characterized the debt to AHL as a noncontingent, liquidated, secured obligation in the amount of $1,248,747, an amount in excess of the secured debt limitation of $1,149,525 established by § 109(e) for an individual to be eligible for chapter 13 relief. Stebbins' original Schedule D, therefore, established that he was ineligible to be a debtor under chapter 13. After the Trustee filed her Motion to Dismiss, Stebbins filed his Amended Schedule D where he recorded the debt to AHL as a contingent, liquidated, secured debt in the amount of $1,248,747 because there had been no entry of a deficiency judgment in

the Foreclosure Action. Stebbins, however, is mistaken in his characterization of his obligation to AHL as contingent.

A contingent debt is "one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger . . . liability." *In re Mazzeo*, 131 F.3d. at 303 (quoting *Brockenbrough v. Commissioner*, 61 B.R. 685, 686 (W.D. Va. 1986)). If the triggering event that gives rise to the liability in question occurs prepetition, the debt is no longer contingent; rather, it is noncontingent as of the petition date. *Id.* ("[A] creditor's claim is not contingent when the 'triggering event' occurred prior to the filing of the chapter 13 petition.")

The triggering "event" that causes a contingent liability to turn into a noncontingent obligation does not require that the liability be reduced to a judgment.

> Nor, by a future "event," do we refer to a judicial determination as to liability and relief, for a claim may be noncontingent even though it has not been reduced to judgment. See 11 U.S.C. § 101(5)(A). Although the creditor's ability to collect the sum due him may depend upon adjudication, that does not make the debt itself contingent. "In broad terms, the concept of contingency involves the nature or origin of liability. More precisely, it relates to the time or circumstances under which the liability arises. In this connection liability[,] does not mean the same as judgment or remedy, but only a condition of being obligated to answer for a claim."

*In re Mazzeo*, 131 B.R. at 303 (quoting *In re Knight*, 55 F.3d 231, 236 (7th Cir. 1995)).

Notwithstanding the fact that Throg's Neck Trading defaulted on its indebtedness to AHL and thereby triggered Stebbins' liability to AHL prepetition, Stebbins contends that his guaranty obligation to AHL remains contingent until all the elements of N.Y. R.P.A.L. § 1371 in the Foreclosure Action have been completed and a deficiency judgment has been entered fixing the

amount due and owing. This argument, however, ignores the difference between a guaranty of payment and a guaranty of collection.

> The fundamental distinction between guaranty of payment and one of collection is, that in the first case the guarantor undertakes unconditionally that the debtor will pay, and the creditor may, upon default, proceed directly against the guarantor, without taking any steps to collect of the principal debtor, and the omission or neglect to proceed against him is not (except under special circumstances) any defense to the guarantor; while in the second case the undertaking is that if the demand cannot be collected by legal proceedings the guarantor will pay, and consequently legal proceedings against the principal debtor, and a failure to collect of him by those means are conditions precedent to the liability of the guarantor.

*U.S. Bank Nat'l Ass'n v. Perlmutter (In re South Side House, LLC)*, 470 B.R. 659, 675 (Bankr. E.D.N.Y. 2012) (quoting *McMurray v. Noyes*, 72 N.Y. 523, 524-25 (N.Y. 1878)).

The Guaranty signed by Stebbins is a guaranty of payment. It is an undertaking by Stebbins to pay the guaranteed liability immediately upon default of the principal obligor, Throg's Neck Trading.

The Guaranty provides in pertinent part:

> [T]he Undersigned hereby absolutely and unconditionally guarantees to Lender, the full and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of the debts, liabilities and obligations described as follows: . . . .
>
> > B. If this ☒ is checked, the Undersigned guarantees to Lender the payment and performance of each and every debt, liability and obligation of every type and description which Borrower may now or at any time hereafter owe to Lender (whether such debt, liability or obligation now exists or is hereafter created or incurred, and whether it is or may be direct or indirect, due or to become due, absolute or contingent, primary or secondary, liquidated or unliquidated, or joint, several, or joint and several; all such debts, liabilities and obligations being hereinafter collectively referred to as the "Indebtedness"). Without

>> limitation, this guaranty includes the following described debt(s): Any and all of the Borrower's indebtedness to the Lender.

The Undersigned further acknowledges and agrees with Lender that:

1. No act or thing need occur to establish the liability of the Undersigned hereunder, . . . .

2. This is an absolute, unconditional and continuing guaranty of payment of the Indebtedness and shall continue to be in force and be binding upon the Undersigned, whether or not all Indebtedness is paid in full, until this guaranty is revoked by written notice actually received by the Lender, and such revocation shall not be effective as to the Indebtedness existing or committed for at the time of actual receipt of such notice by the Lender, or as to any renewals, extensions and refinancings thereof.

. . .

4. The liability of the Undersigned hereunder shall be limited to a principal amount of $<u>Unlimited</u> (if unlimited or if no amount is stated, the Undersigned shall be liable for all Indebtedness, without any limitation as to amount), plus accrued interest hereon and all other costs, fees, and expenses agreed to be paid under all agreements evidencing the Indebtedness and securing the payment of the Indebtedness, and all attorneys' fees, collection costs and enforcement expenses referable thereto. Indebtedness may be created and continued in any amount, whether or not in excess of such principal amount, without affecting or impairing the liability of the Undersigned hereunder. The Lender may apply any sums received by or available to Lender on account of the Indebtedness from Borrower or any other person (except the Undersigned), from their properties, out of any collateral security or from any other source to payment of the excess. Such application of receipts shall not reduce, affect or impair the liability of the Undersigned hereunder. . . .

. . .

6. The liability of the Undersigned shall not be affected or impaired by any of the following acts or things: . . . (vii) foreclosure or enforcement of any collateral security . . .

. . .

11. . . . Lender shall not be required first to resort for payment of the Indebtedness to Borrower or other persons or their properties,

10

>or first to enforce, realize upon or exhaust any collateral security
>for Indebtedness, before enforcing this guaranty.

Guaranty, AHL's Affirmation in Support of Standing Trustee's Motion to Dismiss Bankruptcy Petition, Ex. C, Sept. 15, 2014.

There is no dispute that Throg's Neck Trading, the principal obligor, was in default of its obligation to AHL at the time Stebbins filed his chapter 13 petition. Thus, under the Guaranty, Stebbins' liability to AHL was triggered upon the default of Throg's Neck Trading on its obligation to AHL. *In re Wilson*, 9 B.R. 723, 725 (Bankr. E.D.N.Y. 1981) (finding that "as a guarantor of payment, liability attached to the debtor immediately upon default of the principal obligor.") By the express terms of the Guaranty, Stebbins' liability was not conditioned on the occurrence of any other event, such as the conclusion of the Foreclosure Action. Default by Throg's Neck Trading was all that was required to make the debt in question noncontingent. Under paragraph 11 of the Guaranty, AHL was not required first to pursue payment of the outstanding indebtedness from Throg's Neck Trading before enforcing the Guaranty. Further, because Stebbins agreed that AHL need not resort to the collateral, i.e., the Bridgehampton properties, before enforcing the guaranty liability, AHL had the contractual right to enforce the Guaranty immediately.

>[T]he combination of a guaranty of payment and a clause in the
>agreement waiving the creditor's duty to first move against the
>primary obligor's assets rendered the guarantor liable for the full
>amount of the debt immediately upon the default of the primary
>obligor.
>. . .
>Notwithstanding the fact that the creditor may at some time in the
>future decide to release the guarantor from some or all of the debt
>by applying the collateral does not alter the fact that as of the date
>of the filing, the debtor was liable for the full amount of the claim
>without regard to the collateral.

11

*Id.*, at 726-27.

That AHL chose to commence the Foreclosure Action and proceed first against the Bridgehampton properties does not alter the fact that Stebbins promised to pay the debt immediately upon Throg's Neck Trading's default without the need of AHL to exhaust the collateral. The Court, therefore, holds that, as of the Petition Date, the obligation of Stebbins to AHL is noncontingent.

      B.      Whether the AHL Claim is Liquidated.

The Court had initially raised the issue of whether the debt to AHL was liquidated at the October 23, 2014 hearing on the Motion to Dismiss. Although Stebbins argued in his supplemental brief and at the December 18 hearing that the debt to AHL was unliquidated, he did not further amend Schedule D to list the debt in question as unliquidated. Similar to his arguments with respect to the issue of contingency, Stebbins claimed that because AHL elected under N.Y. R.P.A.P.L. § 1301(3) to foreclose on the Bridgehampton properties, AHL must first obtain a deficiency judgment against Stebbins under N.Y. R.P.A.P.L. § 1371(1) in order to fix or liquidate the amount of the debt in question. Stebbins is mistaken.

A debt is "liquidated" where the claim can be readily determined by reference to an agreement or simple mathematical computation. *In re Mazzeo*, 131 F.3d at 304. There is no question that Stebbins' obligation to AHL is liquidated because the amount of the debt is readily ascertainable by both the Judgment itself and a mathematical computation which, at any point in time, allows the parties to arrive at the exact amount due from Throg's Neck Trading and consequently, from Stebbins under the Guaranty.

Stebbins cites to *In re Mandarino*, 312 B.R. 214 (Bankr. E.D.N.Y. 2002), as support for his argument that the debt in question cannot be readily determined because computation of the precise amount due must await entry of a deficiency judgment against Stebbins. Stebbins' reliance on *Mandarino* is misplaced. *Mandarino* concerned a tort claim by CSC Holdings ("Cablevision") based on Mandarino's liability in connection with the purchase of forty-five pirated descrambling devices. There was no written contract or agreement between Cablevision and Mandarino. Cablevision commenced an action against Mandarino under 47 U.S.C. § 605, the Communications Act of 1934, as amended by the Telecommunications Act of 1996, which sets forth sanctions ranging from $10,000 per unit to as little as a total fine of $250. The action was pending when Mandarino filed for chapter 13 relief and the amount of Mandarino's liability to Cablevision was still unknown at that time. *Id.*, at 219.

In this case, Stebbins' liability to AHL under the Guaranty was triggered upon Throg's Neck Trading's default, which was the condition precedent to invoking Stebbins' liability and obligation to pay the amount owing under the Guaranty. From that point in time, Stebbins owed the full amount of the outstanding indebtedness. The amount of the liability was readily ascertainable at any time based upon the written contracts, i.e., the note and the Guaranty, and by resort to the Judgment entered against Stebbins and Throg's Neck Trading which aggregated, as of January 24, 2014, $1,248,746.63, plus post-judgment statutory interest, disbursements and costs and legal fees. Consequently, the amount owed by Stebbins to AHL under the Guaranty is subject to ready determination. That conclusion is also drawn from Stebbins' own Amended Schedule D where he continues to record the debt to AHL as liquidated in the amount of $1,248,746.63.

While Stebbins may dispute the amount of the debt that he may have to pay AHL, the Second Circuit, in following the "overwhelming body of precedent," held in *Mazzeo* that the existence of a dispute over the underlying amount of a debt does not automatically render the debt either contingent or unliquidated. *In re Mazzeo,* 131 F.3d at 304.

> The Code uses both "unliquidated" and "disputed" in its definition of "claim"; to rule that a claim (and hence the debt with which it is co-extensive) is unliquidated whenever it is disputed would be to render the term "unliquidated" mere surplusage. Such an interpretation would also allow a debtor, simply by characterizing certain claims as disputed, to ensure his eligibility to proceed under Chapter 13 in circumstances that Congress plainly intended to exclude from that chapter.

*Id.*, at 305. "[T]he fact that a claim is disputed does not per se exclude the claim from the eligibility calculation under § 109(e), since a disputed claim is not necessarily unliquidated." *Slack v. Wilshire Ins. Co. (In re Slack)*, 187 F.3d 1070, 1075 (9th Cir. 1999) (quoting *Nicholes v. Johnny Appleseed of Wash. (In re Nicholes)*, 184 B.R. 82, 90-91 (B.A.P. 9th Cir. 1995)).

Since the liability of Stebbins under the Guaranty was triggered by the default of the principal obligor, Throg's Neck Trading, an extrinsic event that occurred before the commencement of the Foreclosure Action, the debt owed by Stebbins to AHL was both liquidated and noncontingent. The commencement of the Foreclosure Action did not change the characterization of the debt. To hold otherwise would convert a guaranty of payment into a guaranty of collection and render the bargained for remedies available to AHL under the Guaranty meaningless.

The Court holds that because Stebbins' debt to AHL was liquidated and noncontingent at the time the chapter 13 petition was filed, it must be included in calculating whether Stebbins satisfies the threshold limits for eligibility for chapter 13 relief under § 109(e).

C.        Classification of AHL's Claim.

To the extent the debt to AHL is scheduled by Stebbins as a secured debt, the Trustee correctly noted that the debt due AHL in the amount of $1,248,746.63, excluding statutory post-judgment interest and other costs and fees, exceeds the statutory ceiling of $1,149,525 for noncontingent, liquidated secured claims under section 109(e). Accordingly, the amount of Stebbins' secured debt, as scheduled, would render Stebbins ineligible for chapter 13 relief.

Notwithstanding Stebbins' characterization of the debt to AHL as secured, the Court notes that Stebbins' debt to AHL is, in fact, an unsecured debt. The debt is secured by real property owned by Throg's Neck Trading, not by Stebbins. Therefore, the debt due AHL under the Guaranty should be included in the calculation of Stebbins' total amount of general unsecured debt as opposed to secured debt. As such, it exceeds the statutory limit of $383,175 for noncontingent, liquidated unsecured debt under section 109(e). Because Stebbins owes a liquidated, noncontingent, unsecured debt to AHL in excess of $383,175, he is not eligible to be a debtor under chapter 13 of the Bankruptcy Code. 11 U.S.C. § 109(e).

## CONCLUSION

For the foregoing reasons, Stebbins' chapter 13 case is dismissed.

So ordered.



**Dated: February 24, 2015**
**Central Islip, New York**

**Louis A. Scarcella**
**United States Bankruptcy Judge**

15